Defendant-appellant, Sandy G. Kuehne, appeals his conviction in the Hamilton Municipal Court for public indecency. We affirm.
Around 11:43 p.m. on June 15, 1997, Hamilton Police Officers Christopher Fackey and Chris Robinson both received a dispatch that a naked man was exposing himself to children at 220 Sycamore Street in Hamilton. Upon arriving at the location, the officers observed appellant standing in the doorway of his residence. Robinson testified that appellant was then arguing with a neighbor, Roy Thomas. The officers also observed children playing outside next door to and in front of appellant's residence. As they approached appellant's residence, neither officer could see below appellant's waist but they could tell that appellant was not wearing a shirt. Appellant went back inside his residence before the officers arrived at his door. The officers questioned appellant, who denied exposing himself naked to children. Robinson took a written complaint from Angela Lake, who was visiting her aunt next door to appellant's residence. Lake told Robinson that she had observed appellant naked in his doorway yelling at the children.
Appellant was subsequently arrested and charged with public indecency in violation of Hamilton Codified Ordinance 533.07 for "recklessly expos[ing] his * * * private parts or engag[ing] in masturbation under circumstances in which his * * * conduct is likely to be viewed by and affront others not members of his * * * household, To Wit: Mr. Kuehne was naked and standing in a doorway yelling at children." At a trial conducted on October 13, 1997, a jury found appellant guilty as charged. Appellant timely filed this appeal and raises three assignments of error.
Appellant's first assignment of error is as follows:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT IN OVERRULING HIS OBJECTION TO THE PROSECUTOR'S REFERENCE TO HEARSAY NOT IN EVIDENCE AND IN ALLOWING OTHER HEARSAY NOT IN EVIDENCE THAT WAS HIGHLY PREJUDICIAL TO THE DEFENDANT.
Appellant argues that he was denied a fair trial based upon prosecutorial misconduct occurring during the prosecutor's closing argument. Specifically, appellant argues that the prosecutor engaged in misconduct by referring to statements allegedly made by the children and Thomas to the officers at the scene. It is undisputed that neither the children nor Thomas testified at the trial, and that the officers did not refer to the statements of these eyewitnesses when they testified at trial.
It is well-established that the prosecution is normally entitled to a certain degree of latitude in its closing arguments. State v. Smith (1984), 14 Ohio St.3d 13. While remarks of a prosecutor may be intemperate, unprofessional, and better left unsaid, the conduct does not necessarily rise to a level sufficient to warrant reversal in all cases. See State v. Woodards (1966), 6 Ohio St.2d 14, 26, certiorari denied (1966), 385 ___ U.S. ___ 930, 87 S.Ct. 289. The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. Smith at 14. A closing argument must be viewed in its entirety to determine prejudice. State v. Hill (1996), 75 Ohio St.3d 195,204, certiorari denied (1996), ___ U.S. ___, 117 S.Ct. 241.
During his closing argument, the prosecutor made the following comments: The prosecutor first commented that "[t]he only issue is was he in a position for anyone, either the children who told this officer that Sandy was standing in the doorway naked * * *." Appellant did not object to the comment. Second, the prosecutor commented that "[w]e do know, because he [appellant] said that he told the officer something about being naked in the apartment that day. * * * That was the exact call that the officers were answering. The officers heard it not from Angela Lake. Heard it from Roy Thomas." Appellant objected on the ground that this was not in evidence. Following a bench side discussion, the trial court instructed the jury to disregard the prosecutor's statement that Thomas stated he saw appellant naked in the doorway, because there was no such evidence in the case.
The prosecutor's third allegedly improper comment was as follows: "[W]hat is undisputed is the children told the officers that they saw Sandy Kuehne in the doorway * * *." The trial court overruled appellant's objection. Finally, the prosecutor commented that "[appellant] went to that doorway naked * * *. [T]hat's what everyone saw, told the officers at the scene." Appellant did not object to this comment.
In the case at bar, appellant failed to object to the prosecutor's first and fourth comments, thereby failing to afford the trial court an opportunity to correct the prosecutor's statements. Under these circumstances, both alleged errors have been waived unless they rise to the level of plain error. State v. DeNicola (1955), 163 Ohio St. 140, paragraph three of the syllabus; Crim.R. 52. Plain error is error of such magnitude that but for the alleged error, the outcome of the trial clearly would have been otherwise. See State v. Long (1978), 53 Ohio St.2d 91,97. Furthermore, notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. Id.
After thoroughly reviewing the record, including appellant's and Lake's testimony, we are unable to conclude that the prosecutor's first and fourth comments, if omitted, would have resulted in a different outcome. Thus, while we acknowledge that these comments were improper, we find that they do not rise to the level of plain error.
We further find that the prosecutor's other two comments did not prejudicially affect substantial rights of appellant. With regard to the prosecutor's third comment, we note that while appellant's objection to it was overruled, the comment itself makes no reference to appellant being naked. Rather, the comment only refers to the children telling the officers that they saw appellant in the doorway. While we acknowledge that the comment is nevertheless suspect, we are unwilling to conclude that it requires reversal of appellant's conviction.
With regard to the prosecutor's second comment, we agree with appellant that the comment was improper as the record is devoid of any evidence that Thomas told the officers he saw appellant naked in the doorway. Nevertheless, we find that the comment does not require a reversal of appellant's conviction as it did not prejudice his substantial rights under the circumstances. Importantly, the trial court instructed the jury to disregard the second comment as there was no such evidence in the case. A jury is presumed to follow any curative instruction given by the trial court. State v. Henderson (1988), 39 Ohio St.3d 24, 33, certiorari denied (1989), 489 ___ U.S. ___ 1072, 109 S.Ct. 1357. Furthermore, such specific curative instructions are generally presumed to be effective. See State v. Ferguson (1983), 5 Ohio St.3d 160,163.
In addition, it is well-established that statements made by counsel during closing arguments are not evidence. State v. Frazier (1995), 73 Ohio St.3d 323, 338, certiorari denied (1996), ___ U.S. ___, 116 S.Ct. 820. In the final charge, the trial court instructed the jury that closing arguments were not evidence, and also instructed the jury that evidence did not include "statements that were stricken by the Court in which you were instructed to disregard."
After reviewing the prosecutor's closing argument in its entirety and the record in general, we find that while the prosecutor's conduct was arguably "an exercise in excessive license based on the lack of evidentiary support reflected in the record," State v. Reed (May 31, 1991), Lake App. No. 89-L-14-130, unreported, at 20, appellant has failed to demonstrate that the cumulative effect of the alleged incidents of prosecutorial misconduct prejudicially affected his substantial rights. Appellant's first assignment of error is overruled.
Appellant's second assignment of error is as follows:
 THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In order for a court of appeals to reverse a trial court's judgment on the basis that a verdict is against the weight of the evidence, the appellate court must unanimously disagree with the fact-finder's resolution of any conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380. The standard for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
At trial, Angela Lake testified that on June 15, 1997, she was visiting her aunt who lived next door to appellant's residence. While she first testified she was with a cousin, Lake immediately corrected herself and stated that she was in fact with her boyfriend that evening. Lake testified that as she was walking by appellant's residence, she saw appellant standing in the doorway of his residence, fully exposed, completely naked. Lake stated that there were three or four young children playing outside that evening.
On cross-examination, Lake testified that her boyfriend "was in the house. He was walking with me. He kept walking." Confronted with the inconsistency of her statements, Lake testified that "[t]o tell you the truth, I'm not really sure where [my boyfriend] was at the time. I just know that he was there with me that night. * * * I know I was standing out there with my boyfriend, but I don't think he was walking with me. He did not see him. I was the only one that saw him and the little kids claimed they seen [sic] him. I don't know if they did or not." On recross, Lake willingly admitted that she had been convicted of petty theft about three weeks before appellant's trial.
Officer Fackey testified that after Officer Robinson "banged" on appellant's door, it took some time for appellant to answer the door. Fackey testified that when appellant answered the door, appellant had no shirt, no socks and no shoes and that he was "messing with the waist of his pants * * * [l]ike checking them. Making sure he was all right." Appellant complained to both officers that the children had been taunting him.
Robinson testified that as he was knocking on appellant's door, appellant stated "hold on, hold on." Like Fackey, Robinson stated that appellant had no shoes, no socks, and no shirt. Robinson testified that while appellant was questioned by the officer, appellant was talking very rapidly and that he "just kept on talking about everything." Robinson also testified that while he was transporting appellant to the police station, appellant admitted being naked in his house but denied exposing himself to small children or Lake.
On cross-examination, Robinson read the second page of the arrest report he had filled out. The page read to the jury includes Lake's statement to the officers at the scene and was as follows:
 Officer received call to 220 Sycamore Street, of a naked man standing in the front doorway. The complainant Angela Lake was visiting friends next door to the suspect residence on Sycamore Street. Several children in front of both residence [sic] playing with adults looking after them as they played. Several children went to Ms. Lake and told her that the suspect was standing in the doorway naked. Ms. Lake looked over to observe the suspect naked in the front doorway, yelling at the children. Upon arriving at the residence, officer heard suspect yelling and observed suspect slamming shut the front door to the residence. The suspect was arrested and his residence was then secured.
Robinson testified that Lake was not present when he wrote the arrest report.
Appellant testified he went into his residence that evening because he was scared of Roy Thomas who was yelling at him. Appellant stated he did not see the officers until after he was in his residence. Appellant denied standing in his doorway naked but admitted he may have slept in the nude earlier that evening. Appellant denied, however, that he was walking naked around his residence just before the officers' arrival. He admitted, however, asking one of the officers if it was legal to walk naked around one's residence.
When asked by the trial court whether he had ever been convicted of any state or federal offense involving theft or moral turpitude within the past ten years, appellant replied he did not believe so. Appellant stated that his record was entirely clean and that anything on there was completely false. When confronted about previous convictions for falsification, grand theft auto, and kidnapping, appellant admitted that there had been charges against him but claimed they were false or had been dismissed. The record shows that appellant's answers in his overall testimony were not always responsive and were at times rambling or odd.
Appellant contends that his conviction was against the manifest weight of the evidence because it was almost solely based on the "inconsistent testimony of only one dubious eyewitness," Lake, whose credibility was highly questionable. Appellant's contention is primarily directed to the credibility of the witnesses. It is well-settled that the weight to be given the evidence and the credibility of the witnesses are matters to be determined by the trier of fact. State v. Loza (1994), 71 Ohio St.3d 61,69, certiorari denied (1995), ___ U.S. ___, 115 S.Ct. 1983. A difference of opinion as to the credibility of witnesses is not a legitimate ground for reversing the decision of the trier of fact, in this case the jury, who had the first-hand ability to observe the witnesses and assess their credibility. See State v. Amburgey (1987), 33 Ohio St.3d 115, 117.
Having thoroughly reviewed the record in the case at bar, we conclude that a rational trier of fact could have found the charge of public indecency proven beyond a reasonable doubt. There was sufficient evidence that appellant recklessly exposed his private parts to others who were not members of his household and were likely to be affronted by such conduct. Appellant is correct that the issue turned upon the credibility of the witnesses. Obviously, the jury chose to believe Lake's testimony rather than appellant's. We will not second-guess the jury's decision. We therefore find that appellant's conviction for public indecency was not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
Appellant's third assignment of error is as follows:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT IN OVERRULING HIS MOTION FOR A MISTRIAL AFTER THE PROSECUTOR, IN FRONT OF THE JURY, MENTIONED THE DEFENDANT'S ALLEGED PRIOR BAD ACT, WHICH WAS INADMISSIBLE AND HIGHLY PREJUDICIAL.
The record shows that while cross-examining appellant, the prosecutor asked appellant if he recalled being in the county jail. Appellant's counsel immediately objected. However, before the trial court could rule on the objection, the prosecutor continued his cross-examination by referring to "[r]ecent times where [appellant] took off [his] clothes there[.]"
The trial court then immediately sustained the objection. Thereafter, appellant's counsel moved for a mistrial which the trial court denied. The trial court subsequently instructed the jury to disregard the prosecutor's question. Appellant argues that the prosecutor's reference to appellant's alleged undressing in the county jail on a different occasion violated Evid.R. 404(B) and thus warranted a mistrial.
A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred, unless the substantial rights of the accused are adversely affected. State v. Reynolds (1988), 49 Ohio App.3d 27, 33. Rather, a mistrial should be ordered "only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991),62 Ohio St.3d 118, 127, certiorari denied (1992), 504 ___ U.S. ___ 960,112 S.Ct. 2315.
The granting or denying of a mistrial rests within the sound discretion of the trial court, State v. Sage (1987), 31 Ohio St.3d 173,182, and thus will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Williams (1975), 43 Ohio St.3d 88, 93. "Because a trial judge is in the best position to gauge the impact of any error on the jury, the trial court's decision whether to grant a mistrial due to something which has occurred during trial is entrusted to the court's discretion." State v. Evers (May 8, 1989), Clermont App. No. CA88-09-068, unreported, at 4.
Evid.R. 404(B) prohibits the introduction of evidence of past crimes, wrongs, or acts to prove the character of the accused in order to show he acted in conformity therewith. In construing Evid.R. 404(B) in State v. Mann (1985), 19 Ohio St.3d 34, the Supreme Court of Ohio held in paragraph one of the syllabus:
 Prosecution evidence that a defendant has committed other crimes, wrongs or acts independent of the offense for which he is on trial is not generally admissible to demonstrate that the defendant has a propensity for crime or that his character is in conformity with the other acts.
The record shows that the prosecutor offered no valid reason under Evid.R. 404(B) for asking appellant questions about his conduct in the county jail. As a result, and in light of the Supreme Court's holding in State v. Broom (1988), 40 Ohio St.3d 277, certiorari denied (1989), 490 ___ U.S. ___ 1075, 109 S.Ct. 2089
(Evid.R. 404(B) is to be strictly construed against the admission of other acts evidence), we conclude that the prosecutor violated Evid.R. 404(B) by referring to appellant's undressing in jail on an occasion unrelated to that for which he was on trial. See Evers, Clermont App. No. CA88-09-068, unreported.
However, although the prosecutor engaged in the inappropriate line of questioning detailed above, we are unable to conclude, under the circumstances of this case, that the trial court abused its discretion by denying appellant's motion for a mistrial. The record clearly shows that the trial court immediately sustained appellant's objection and instructed the jury to disregard the prosecutor's statements to appellant. As already noted, a jury is presumed to follow any curative instructions given by the trial court. Henderson, 39 Ohio St.3d at 33. There is no evidence in the record to indicate that the jury as a whole, or any of its members, did not follow the instructions given by the trial court. The prosecutor did not further elicit any such testimony following the trial court's curative instruction. In addition, in the final charge to the jury, the trial court once again instructed the jury to disregard any statements stricken by the court or which the court instructed the jury to disregard.
We therefore find that the trial court did not abuse its discretion in overruling appellant's motion for a mistrial. Appellant's third assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.