THE STATE OF OHIO, APPELLEE, *v.* HENDERSON, APPELLANT.

[Cite as State *v.* Henderson (1988), 39 Ohio St. 3d 24.]

(No. 87-447—Submitted June 13, 1988—Decided September 28, 1988.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *Christian J. Schaefer, John P. Valentine* and *Janna H. Flessa,* for appellee.

*Cissell & Smith, Timothy A. Smith* and *D. Shannon Smith,* for appellant.

H. BROWN, J. Jerome Henderson appeals his convictions and sentence of death. We uphold the convictions and affirm the death sentence, for the following reasons.

I

We begin by a review of appellant's twelve propositions of law and supporting arguments.

A

Appellant's first proposition is that the Ohio death penalty scheme is unconstitutional, for eleven separate reasons. Of these, appellant concedes that we have decided ten of them in previous decisions; appellant has raised them to preserve them for future appeals. For the reasons set forth in *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d 768; *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 173-174, 15 OBR 311, 319-320, 473 N.E. 2d 264, 277, and paragraph two of the syllabus; and *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 138, 141, 22 OBR 203, 215, 217-218, 489 N.E. 2d 795, 808, 810, we overrule these ten challenges.

Appellant's other challenge to the constitutionality of the Ohio statute is a contention that the statute mandates a death penalty because no system of moral beliefs would permit the conclusion that a defendant's age, family background or any other mitigating factor is more significant than the fact that the defendant intentionally killed an innocent person. Appellant believes that his argument is different than the argument rejected in *Jenkins, supra,* that the General Assembly failed to

*limit* the sentencing authority's discretion. Appellant argues that the Ohio scheme *eliminates* sentencing discretion. Appellant's argument is without merit for two reasons.

First, juries are not required to recommend the death sentence unless they find that the aggravating circumstances outweigh the mitigating factors. *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 24, 23 OBR 13, 20, 490 N.E. 2d 906, 914. We recognized in *State* v. *Coleman* (1988), 37 Ohio St. 3d 286, 294, 525 N.E. 2d 792, 800, that "* * * a reasonable jury could (and Ohio juries have been able to) recommend life sentences under the right set of facts. This is supported by the fact that Ohio juries have recommended the death penalty on a less-than-regular basis."

Second, appellant's premise is flawed because it fails to perceive that the balance is not between mitigating factors and the intentional killing of an innocent person. Intentional killing describes the crime of aggravated murder. See R.C. 2903.01. What the jury is balancing are any mitigating factors present in the case against the separate and distinct factors, termed "aggravating circumstances," enumerated in R.C. 2929.04(A)(1) through (8). At least one of these circumstances must exist in addition to the aggravated murder or consideration of the death penalty is precluded. See R.C. 2929.04(A). We find no merit in appellant's first proposition.

B

Appellant's second proposition is that he was prejudiced by the trial court's refusal to excuse prospective alternate juror Andrea Pferrman for cause.

We agree with the court of appeals that the trial court did not err by refusing to excuse Pferrman for cause. Al-

though Pferrman initially expressed reluctance to serve and a belief that appellant must have done something or he would not be in court, she did state, upon further questioning, that she would follow the law. Crim. R. 24 states in part:

"(B) Challenge for cause. A person called as a juror may be challenged for the following causes:

"* * *

"(9) That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state; *but no person* summoned as a juror *shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.*" (Emphasis added.)

Whether a prospective juror will follow the law as given by the court is a matter within the discretion of the trial judge and we will not disturb the court's ruling on a challenge for cause, absent an abuse of discretion. *State* v. *Scott* (1986), 26 Ohio St. 3d 92, 26 OBR 79, 497 N.E. 2d 55; *State* v. *Williams* (1983), 6 Ohio St. 3d 281, 6 OBR 345, 452 N.E. 2d 1323. We find no merit in appellant's second proposition.

## C

Appellant's third proposition challenges the jury's finding that appellant was guilty of attempted rape. Appellant asserts that the only indication that appellant attempted to rape Acoff was the fact that she was nude when murdered.

R.C. 2923.02 defines "attempt" as:

"(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense."

R.C. 2907.02, at the time of the offense herein, defined "rape" as:

"(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

"(1) The offender purposely compels the other person to submit by force or threat of force."

Vaginal penetration, however slight, is "sexual conduct." R.C. 2907.01(A).

The complicating factor is that appellant and James Martin, with whom Acoff had engaged in sexual intercourse hours before she was murdered, are both type O secretors. Accordingly, semen from appellant could not conclusively be differentiated from semen from Martin. This fact probably led the jury to find that one of the elements of rape, sexual conduct (*i.e.,* vaginal penetration), was not proven beyond a reasonable doubt.

However, to find attempted rape, the jury only had to find beyond a reasonable doubt that appellant purposely took a substantial step toward committing the rape of Acoff. *State* v. *Woods* (1976), 48 Ohio St. 2d 127, 2 O.O. 3d 289, 357 N.E. 2d 1059. "To constitute a substantial step, the conduct must be strongly corroborative of the * * * [appellant's] criminal purpose." *Id.* at paragraph one of the syllabus. Here, the victim's body was found nude, with legs spread. Appellant is a type O secretor and semen consistent with such a person was present on the appellant's coat. Semen was also found in the victim's vagina. The pattern of blood from injuries inflicted on the victim's body indicated that most were inflicted while she was in a horizontal position. Her body also

had a bloody smear across her right breast. There was no evidence of theft or any non-sexual crime as a reason for appellant's being in the apartment. Taken together, these facts, as established by circumstantial evidence, meet the *Woods* test. Circumstantial evidence is sufficient to establish an element of any crime, including attempted rape. *State* v. *Graven* (1978), 54 Ohio St. 2d 114, 118-119, 8 O.O. 3d 113, 116, 374 N.E. 2d 1370, 1373. We find no merit in appellant's third proposition.

D

Appellant's fourth proposition is that aggravated burglary and aggravated murder are allied offenses of similar import within the contemplation of R.C. 2941.25 because the crimes were committed incidentally to each other. Therefore, appellant argues, he cannot be convicted of both crimes under R.C. 2941.25(A), and the aggravated burglary cannot be the basis for elevating the aggravated murder to the narrow class of murders subject to the death penalty.

We agree with the court of appeals that in order to commit either the crime of aggravated burglary or aggravated murder, the other crime need not be committed. See *State* v. *Moss* (1982), 69 Ohio St. 2d 515, 520, 23 O.O. 3d 447, 450, 433 N.E. 2d 181, 186, wherein we explained:

"As regards aggravated murder and aggravated burglary, however, no such nexus exists. The two offenses are not prerequisites, one for the other. To consummate either offense, the other need not by definition be committed. Aggravated murder and aggravated burglary are never merely incidental to each other as kidnapping was incidental to and an element of the rape in *State* v. *Donald* [(1979), 57 Ohio St. 2d 73, 11 O.O. 3d 242, 386 N.E. 2d 1341], *supra.*"

Appellant claims that the attempted rape, aggravated burglary and aggravated murder were all committed "at precisely the same time." The evidence, however, supports the opposite conclusion, especially the fact that Acoff's left hand was cut and wrapped in a towel. This indicates that a pause occurred between the commission of the aggravated burglary and the other crimes.

Appellant's contention that the aggravated burglary cannot be the basis for elevating the aggravated murder to the narrow class of murders subject to the death penalty apparently is founded upon a belief that the aggravating circumstances of R.C. 2929.04 (A)(7) duplicate the elements of the underlying crime of aggravated murder, as set forth in R.C. 2903.01 (B). We have rejected this argument before in *Jenkins, supra,* at 177-178, 15 OBR at 322-323, 473 N.E. 2d at 279-280; and *State* v. *Barnes* (1986), 25 Ohio St. 3d 203, 206, 25 OBR 266, 269, 495 N.E. 2d 922, 925.

Moreover, the purpose of an aggravating circumstance was stated in *Zant* v. *Stephens* (1983), 462 U.S. 862, 877, and serves to "* * * genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."

R.C. 2929.04(A)(7), which sets forth the aggravating circumstances of aggravated burglary and rape, fulfills that purpose by allowing the death penalty to be imposed for felony murder only when the defendant was the principal offender or when the murder was premeditated. The finder of fact had to find that appellant committed murder while committing or attempting to commit burglary and/or rape and further, that appellant was the principal offender or that the murder was premeditated. By such a

limitation, the Ohio General Assembly has complied with *Zant, supra,* by narrowing the class of death-eligible aggravated murders.

Even if we assume, for the sake of argument, that the aggravating circumstances for felony murder (set forth in R.C. 2929.04[A][7]) are identical to the elements of aggravated murder (set forth in R.C. 2903.01[B]), the Ohio death penalty scheme is constitutional.

In *Lowenfield* v. *Phelps* (1988), 484 U.S. ____, 98 L. Ed. 2d 568, 108 S. Ct. 546, Chief Justice Rehnquist, writing for the majority, stated that the narrowing function that is required of all capital sentencing schemes may constitutionally be provided in either of two ways. First, the legislature may broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase. Second, the legislature may itself narrow the definition of capital offenses so that the jury finding at the guilt phase responds to this concern. *Id.* at ____, 98 L. Ed. 2d at 582, 108 S. Ct. at 555. The court found that Louisiana's capital sentencing scheme (at issue in the case) was of the second type. The court held that the duplicative nature of the statutory aggravating circumstances did not render petitioner's sentence infirm, since the constitutionally mandated narrowing function was performed at the guilt phase and the Constitution did not require an additional aggravating circumstance finding at the penalty phase. *Id.* at ____, 98 L. Ed. 2d at 582-583, 108 S. Ct. at 555.

Ohio's capital sentencing scheme is also of the second type. It requires the jury to consider at the guilt phase whether the crime falls into a specific category justifying capital punishment.

Accordingly, we hold that Ohio's capital sentencing scheme does not violate the Ohio or United States Constitutions even if the aggravating circumstances for felony murder (set forth in R.C. 2929.04[A][7]) are identical to the elements of aggravated murder (set forth in R.C. 2903.01[B]). (*State* v. *Jenkins, supra,* at 177-178, 15 OBR at 322-323, 473 N.E. 2d at 279-280, followed.)

Ohio's capital sentencing scheme constitutionally narrows the class of persons eligible for the death penalty. (*Lowenfield* v. *Phelps, supra,* followed.)

### E

Appellant's fifth proposition of law is that the trial court improperly instructed the jury that its finding concerning the death penalty was merely a recommendation and not binding upon the court.[1] Appellant cites *Caldwell* v. *Mississippi* (1985), 472 U.S. 320, to support his contention that such an instruction impermissibly reduces the jury's sense of responsibility and increases the likelihood of a recommendation of death.

The appellate court recognized that the instant charge essentially mirrored the one given in *Jenkins, supra.*

---

[1] The trial judge charged the jury as follows:

"I've told you when you first came in this morning, the lawyers have mentioned it to you, that a jury recommendation to the Court that the death penalty be imposed is just that. It's a recommendation. It is not binding on me.

"The final decision under the law in the event you recommend the death penalty is up to me. I may, under guidelines that I have to follow, either accept or reject your recommendation. However, I want to impress upon you that because the ultimate decision may end up with me, don't take your job too lightly."

Although we have repeatedly stated our preference that no comment be made on the question of who bears the ultimate responsibility for determining the appropriateness of a death sentence, we also have held that such an instruction accurately states Ohio law and does not constitute reversible error. See *Jenkins, supra,* at paragraph six of the syllabus; *State* v. *Buell, supra*; *State* v. *Rogers* (1986), 28 Ohio St. 3d 427, 28 OBR 480, 504 N.E. 2d 52; and *State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 520 N.E. 2d 568. Additionally, the United States Supreme Court has limited *Caldwell's* applicability to comments that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision. See *Darden* v. *Wainwright* (1986), 477 U.S. 168, 184, at fn. 15.

Appellant's argument is without merit.

## F

In his sixth proposition of law, appellant claims that he was prejudiced by the trial court's overruling of his motion for a "two or three week" continuance to prepare for the mitigation stage.

The trial court denied appellant's request and instead granted a one-week continuance between the finding of guilt and the beginning of the mitigation stage. Almost three months had passed between the time of the indictment and the jury's verdict concerning guilt, during which counsel was well aware that appellant might face capital sentencing procedures.

The decision concerning the continuance was within the discretion of the trial court. Since appellant fails to show that the court's ruling was unreasonable, arbitrary or unconscionable, we decline to reverse it. *State* v.

*Adams* (1980), 62 Ohio St. 2d 151, 16 O.O. 3d 169, 404 N.E. 2d 144.

## G

Appellant's seventh proposition is that the court committed prejudicial error when it limited the jury's consideration to only two mitigating factors. The court charged the jury on the mitigating factors as follows:

"In this case you must consider two mitigating factors. One is the history and the background of Mr. Henderson. And, secondly, any other factor or factors that are relevant to the issue of whether the defendant should be sentenced to death."

The defendant has the burden of going forward with the evidence of any factors in mitigation of the imposition of the death sentence. *Jenkins, supra,* at 171, 15 OBR at 317, 473 N.E. 2d at 275. The two factors considered by the jury (*i.e.,* R.C. 2929.04[B] and 2929.04 [B][7]), were the only ones that appellant wanted the jury to consider, as reflected by defense counsel's argument to the court, out of the presence of the jury. The trial court must give the defendant great latitude in the presentation of mitigating factors. R.C. 2929.04(C). However, appellant cannot fail to present evidence of other mitigating factors, assert that the jury may not consider factors not presented and then, on appeal, argue that he has been prejudiced by such a course of events. We find no merit in appellant's seventh proposition.

## H

In his eighth proposition of law, appellant asserts that the trial court erred when it overruled his pretrial motion to hire a psychiatrist and psychologist at state expense to assist in the preparation of a defense. Defense counsel's supporting memorandum stated that appellant was indigent

and that "* * * it is necessary for me to adequately prepare this case to have the appointment and access to a psychologist and a psychiatrist to assist me in the preparation of this case." The prosecution filed a motion in opposition and the trial court overruled appellant's motion without a hearing. Prior to his conviction, appellant filed neither an insanity plea nor made a suggestion of incompetency.[2]

Appellant contends that, with the services of a psychiatrist at the onset of trial, the mitigating factor of diminished mental capacity set forth in R.C. 2929.04(B)(3) might have been established. Appellant relies upon the authority of *Ake* v. *Oklahoma* (1985), 470 U.S. 68.

---

[2] Appellant did also request a psychiatric examination after the guilt finding. A psychologist was appointed by the court at that time, and the court found appellant competent to continue with the mitigation phase.

[3] In the sentencing hearing, the jury deliberated from 12:31 p.m. to 9:15 p.m. on July 24, 1985. The jury was given meal breaks. The following morning, deliberations resumed at an unspecified time. At 1:22 p.m., the jury presented the message to the court that it was deadlocked. The court, addressing the entire jury, gave the following supplemental instruction:

"Well, let me just say this to all of you. I want to remind each one of you that you all took an oath, and that oath was to well and truly try in true deliverance make between the State of Ohio and the Defendant, Jerome Henderson. This means that your verdict, your recommendation in this penalty hearing, must be based on the evidence that you received in this courtroom.

"You may not consider sympathy, bias or prejudice. And may I say you may not guess as to possibilities outside of the evidence that you heard in this courtroom. You must and you have to decide the issues

Appellant's reliance upon *Ake, supra,* is misplaced because appellant did not demonstrate to the trial court that his sanity at the time of the offense was to be a significant factor at trial.

Defense counsel's bare assertion that psychiatric services are necessary for adequate case preparation, standing alone, does not meet the test of *Ake, supra,* or *Jenkins, supra.*

## I

In his ninth proposition of law, appellant argues that the trial court erred in giving a supplemental instruction ordering the jury to continue its deliberations concerning the sentence after the jury reported to the court that it was deadlocked.[3] Appellant

that's [sic] in front of you in this case only on the evidence that you heard in this courtroom.

"You all know that for the purpose of returning a verdict at this time all twelve of you must agree. And you have a duty to agree, if it is at all possible.

"Now when you talk to each other in that jury room, obviously each one of you should pay the proper respect to the other person's opinion. And if you do have differences, you should examine those differences in the spirit of honesty and fairness.

"I'm not suggesting by any stretch of the imagination that any one of you should give up a well-grounded opinion or to violate your oath. But it does mean that jurors should not refuse to agree because of mere stubbornness.

"Each one of you should examine the facts from your own viewpoint and from the viewpoint of other jurors.

"Now the verdict of the jury obviously should represent the opinion of each one of you. But this doesn't mean that you can't change your opinions, changing them by talking to each other, because the very object of this whole system is to reach an

states that when confronted by a deadlocked jury the court should instruct the jury to determine which life sentence to recommend, rather than giving the jury a supplemental charge to continue deliberating in the hope that unanimity will be achieved.

We agree with the court of appeals that the trial court's charge conforms with the type approved in *State* v. *Maupin* (1975), 42 Ohio St. 2d 473, 71 O.O. 2d 485, 330 N.E. 2d 708, paragraphs three and four of the syllabus, and *Jenkins, supra,* and was not in error. Moreover, the United States Supreme Court ruled that a similar supplemental charge did not impermissibly coerce the jury to return a death sentence in *Lowenfield, supra,* at ___, 98 L. Ed. 2d at 577-579, 108 S. Ct. at 550-552.

## J

Appellant contends in his tenth proposition that he was prejudiced by disparaging remarks made by the trial judge to defense counsel.

Appellant cites the following exchange between the court and defense counsel during counsel's *voir dire* examination of a prospective juror as particularly egregious:

"[Defense counsel]: Okay. Now, as Jerome Henderson is sitting here today, he is entitled to your presumption of total innocence, even though he's sitting here at the counsel table with the Grand Jury of this county having returned an indictment. You understand that?

"[Prospective juror]: Yes.

"[Defense counsel]: Do you think the Grand Jury would do that if he weren't guilty?

"THE COURT: Well, now, how would she know? That's not a fair question. You don't have to answer that.

"[Defense counsel]: We would, I would like to have your feelings on the presumption of innocence.

"THE COURT: Well, that has nothing to do with the presumption of innocence, what her opinion is of a Grand Jury returning an indictment without evidence, whatever you said. It's ridiculous. How could I answer that question?

"You don't have to answer it.

"Note the objection. Overruled.

"[Defense counsel]: Well, if there is an indictment, can you tell me what your feelings are about just the fact that there's an indictment?

"THE COURT: Do you know what an indictment is?

"[Prospective juror]: Well, that he has been — the evidence would bring him to trial, I would assume.

"THE COURT: Well, you have some general idea.

"But see, you're using terms here that later on the Court will define to them, will explain to them. I am not going to go through the law. I have given you a lot of leeway on both sides because it is a capital case.

"But what you're doing, you're tricking people. Don't trick them. Ask them right out. Tell them, I don't mind if you tell them that he is presumed innocent, right now he's innocent, there's no guilt upon him. The State must prove him guilty. You don't have to prove anything. I don't mind any of that.

"But let's go into this trickery: what is an indictment? What did the Grand Jury do?

---

agreement by each one of you comparing your different views.

"So I don't think you're deadlocked. You go back there and you talk it over."

The jury returned a recommendation of death approximately three hours after resuming deliberations.

"Go ahead.

"[Defense counsel]: Note my objection to the statement by the Court."

While the trial judge might have chosen better words to express himself, we agree with the court of appeals that the judge correctly observed that counsel's question regarding the grand jury's action was unfair. In addition, at the conclusion of the guilt phase, the court charged the jury:

"If during the trial I might have said something or I might have done something here that may give you some indication how I feel about the facts, I'm telling you now to forget it, because you are the only judges of the facts."

A trial jury is presumed to follow the instructions given to it by the judge. *Parker* v. *Randolph* (1979), 442 U.S. 62.

The record reveals that both the prosecuting attorneys and defense counsel were held to the same standard and were similarly corrected by the trial judge. We find no merit in appellant's tenth proposition.

## K

In his eleventh proposition of law, appellant alleges that he was denied the effective assistance of counsel based upon five grounds. These relate to the request for psychiatric assistance, remarks by the trial judge, the request for continuance, restriction in the *voir dire* examination regarding presumption of innocence and failures to object during trial. The grounds which underlie each of these instances have already been separately addressed and found to be without merit.

Accordingly we need not address the counsel-performance component of these grounds. *Strickland* v. *Washington* (1984), 466 U.S. 668, 697. We find no merit in appellant's eleventh proposition.

## L

In his last proposition, appellant urges us to overrule paragraph one of the syllabus in *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 31 OBR 273, 509 N.E. 2d 383, which holds that:

"The proportionality review required by R.C. 2929.05(A) is satisfied by a review of those cases already decided by the reviewing court in which the death penalty has been imposed."

Appellant contends that in a proportionality review, the appellate court should consider capital cases in which the death penalty was not recommended. *Steffen's* rejection of this argument has been approved in *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598, and *State* v. *Coleman, supra.* We do so again today.

## II

Our next task is to independently determine whether the aggravating circumstances outweigh the mitigating factors present in the case, and whether the sentence of death is appropriate.

The aggravating circumstances are that appellant was the principal offender of the aggravated murder of Mary Acoff while committing aggravated burglary and while attempting to commit rape.

At the mitigation phase, appellant's grandfather, aunt, and brother testified concerning appellant's background and character. They testified that appellant's mother died while giving birth to him, his father was absent from the home and he was thereafter raised by his grandparents. As he grew, he became especially close to an older sister; she was murdered by her husband when appellant was a young teen. He was also close to an older brother, Jesse Henderson, who joined the Marines when appellant was thir-

teen. Jesse testified that he himself was a recovering alcoholic and that he believed appellant was an alcoholic. Jesse also testified that appellant was pretty intelligent and had been raised by a close and loving family. Appellant has a son about nine years old. In an unsworn statement, appellant said that he was sorry Acoff was dead but that he did not kill her. He asked the jury to spare his life.

We find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

We further find that a sentence of death herein is not excessive or disproportionate to the penalty imposed in similar cases. See *Steffen, supra; State* v. *Apanovitch* (1987), 33 Ohio St. 3d 19, 514 N.E. 2d 394; and *State* v. *Poindexter, supra.* We affirm appellant's convictions and the sentence of death.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and WRIGHT, JJ., concur.

