NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0399n.06
Filed: June 9, 2006

No. 03-3988/03-4054/03-4080

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JEROME HENDERSON, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Petitioner-Appellee/Cross-Appellant,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| TERRY COLLINS, Warden, | ) | **O P I N I O N** |
| | ) | |
| **Respondent-Appellant/Cross-Appellee.** | ) | |

BEFORE: NORRIS, BATCHELDER, and CLAY, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** This appeal requires us to apply the analytical framework announced last term by the Supreme Court in *Gonzalez v. Crosby*, 125 S. Ct. 2641 (2005). Henderson is an Ohio prisoner under sentence of death. After his petition for a writ of habeas corpus was denied by this court, *Henderson v. Collins*, 262 F.3d 615, 617 (6th Cir. 2001), *cert. denied*, 535 U.S. 1002 (2002), he filed two motions for relief from judgment pursuant to Fed. R. Civ. P. 60(b). The district court granted the first of these motions based upon its reconsideration of a jury instruction given during the sentencing phase of petitioner's trial. The warden now appeals. For his part, Henderson cross-appeals the portion of the district court's order that rejected a DNA claim raised in the second Rule 60(b) motion.[1]

---

[1] Petitioner's notice of appeal also designated an "unaddressed *Batson* issue." That issue was neither briefed nor argued to this court and is therefore deemed waived.

For the reasons set out below, we conclude that the Rule 60(b) motions represent "claims" for habeas corpus relief under 28 U.S.C. § 2254(b). Rather than reach their merits, the district court should instead have construed them as a second or successive habeas corpus petition, which may not be filed in the district court without permission from the court of appeals. *See* 28 U.S.C. § 2244(b)(3)(A). Under the circumstances, the district court should have transferred the case to this court so that we could decide whether Henderson is entitled to file another habeas petition. *See In re Bowling*, 422 F.3d 434, 440 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 1353 (2006). Accordingly, we vacate the order of the district court and we construe Henderson's Rule 60(b) motions and briefs on appeal as a request for permission to file a second or successive habeas corpus petition. We deny that permission because Henderson's claims do not meet the statutory requirements.

## I.

Henderson was charged with rape, aggravated burglary, and two counts of aggravated murder with attached felony-murder specifications.[2] The jury acquitted Henderson of rape, but convicted him of attempted rape and all other counts and specifications. He was sentenced to death and to consecutive terms of imprisonment for the attempted rape and aggravated burglary. He unsuccessfully sought relief in state court and then in 1991 filed a federal habeas corpus petition, which was dismissed without prejudice for failure to exhaust state-court remedies.

In 1994, he refiled his federal petition, specifying twenty-seven grounds for relief. Among other matters, the petition asserted that the trial court committed constitutional error in instructing

---

[2] While there was but one victim, the indictment charged petitioner based upon two different felony-murder specifications: aggravated burglary and rape.

the jurors that they must unanimously reject the death sentence – that is, they had to first "acquit" Henderson of death – before considering one of two possible life sentences. As a related ground for relief, the petition cited the failure of appellate counsel to raise this claim, which deprived Henderson of his Sixth Amendment right to effective assistance of counsel.

Five years later, the district court affirmed the constitutionality of the jury's finding of guilt, but conditionally granted the writ with respect to Henderson's death sentence based upon its conclusion that the trial court erred when it gave an *Allen*[3] or "dynamite" charge to a deadlocked jury. "Instead, the trial judge's supplemental charge to the [jurors] should have informed them that they should then choose between one of the two life sentences under [Ohio Rev. Code] § 2929.03(D)(2)." *Henderson v. Collins*, 101 F. Supp. 2d 866, 918 (S.D. Ohio 1999). The warden appealed; Henderson cross-appealed. As mentioned earlier, this court reversed the grant of the writ. *Henderson v. Collins*, 262 F.3d at 617.

On May 7, 2002, Henderson filed a Rule 60(b) motion requesting the district court to grant him relief from judgment because appellate counsel was ineffective for failing to argue, *inter alia*, that the acquittal-first jury instruction, which was challenged in his original petition, was improper. Henderson later filed a supplemental Rule 60(b) motion in which he requested access to biological material in the State's possession so that DNA tests could be performed.

Without deciding whether the initial Rule 60(b) motion constituted a second or successive petition, the district court denied it because it raised claims which the district court had addressed

---

[3] *See Allen v. United States*, 164 U.S. 492, 501 (1896) (approving supplemental instructions to a deadlocked jury under certain circumstances).

and rejected when ruling on the original petition. DNA testing, however, was ordered at court expense. In early 2003, the outcome of the DNA test was filed under seal, and the district court ordered the parties to submit briefs on those results.

The court also *sua sponte* called the parties' attention to a then days-old decision, *Davis v. Mitchell*, 318 F.3d 682 (6th Cir. 2003), in which this court conditionally granted a writ of habeas corpus based upon its conclusion that the acquittal-first instruction given at trial "would have led a reasonable jury to apply an unconstitutional standard of unanimity at all stages in the deliberative process." *Id.* at 690. The district court ordered the parties to brief the impact of *Davis* on the case *sub judice* based upon the following concern:

> This court notes that the dissenting Judge in *Davis* cited *Henderson v. Collins*, 262 F.3d 615, 621-22 (6th Cir. 2001), the appellate decision reversing this Court in the instant case, to support the opposite conclusion to which the majority came. The *Davis* decision and dissent thus may call into question the decision made by the Sixth Circuit in *Henderson v. Collins*.

After briefing, the district court concluded that *Davis* cast "substantial doubt" on the acquittal-first rationale articulated by this panel in our earlier decision. Therefore, the court vacated its previous denial of the Rule 60(b) motion and conditionally granted habeas relief with respect to the acquittal-first instruction. The district court denied the DNA claim, but certified it for appeal.

**II.**

According to the evidence presented at trial, Mary Acoff and her boyfriend, who lived in the same building, engaged in sexual intercourse one night in 1985. Around midnight, she left his apartment and returned to her own. Roughly five hours later, Henderson murdered her in her apartment. Semen was found in her vagina and on Henderson's leather coat, which was recovered

from Henderson's residence three days after the crime. Blood consistent with Acoff's was also found on the coat, and Henderson's blood-stained shoes matched prints at the scene of the crime.

At trial, the jury learned that, based on then-existing scientific technology (relating to the blood types of the possible donors), neither Henderson nor the boyfriend could be excluded as the source of the semen in the vagina.[4] The jury acquitted Henderson of rape, but convicted him of attempted rape and of all other counts and specifications.

Years later, the DNA tests revealed that the semen found in the victim could not have been Henderson's, but could have been the boyfriend's. The semen on the coat, however, could not have been the boyfriend's, but could have been Henderson's. Furthermore, the report summarizing the test results pointed out that "[s]ince the female blood on the Henderson leather coat . . . is genetically compatible with Mary Acoff and only a few human beings who have ever lived, this finding does not support Henderson's claims of factual innocence in the murder of Mary Acoff."

**III.**

Although Henderson's § 2254 petition was filed prior to the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), his Rule 60(b) motions were filed post-AEDPA. While the Seventh Circuit has held that the AEDPA applies to all motions filed after its effective date "unless the movant had

---

[4] Additional facts and evidence tying Henderson to the crimes, such as his fingerprint found inside Acoff's apartment, are detailed in the Ohio Supreme Court opinion on direct appeal. *See State v. Henderson*, 528 N.E.2d 1237, 1238-42 (Ohio 1988).

reasonably relied on the previous law in holding back a ground presented in the successive motion," *In re Davenport*, 147 F.3d 605, 608 (7th Cir. 1998); *see also Pratt v. United States*, 129 F.3d 54, 58-60 (1st Cir. 1997), we have adopted a slightly different approach. When, as here, the original petition was filed pre-AEDPA, we have held that a reviewing court must analyze whether the second or successive habeas petition would have survived under the pre-AEDPA "abuse of the writ" standard[5] as set forth in *McCleskey v. Zant*, 499 U.S. 467, 493-95 (1991). *In re Hanserd*, 123 F.3d 922, 928-29 (6th Cir. 1997). Otherwise, petitioner's claim might be subject to the kind of "impermissible retroactive effect" discussed in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). As we have observed elsewhere:

> When a case implicates a federal statute enacted after the events in suit, and Congress has not expressly prescribed the statute's proper reach, the court must determine whether the new statute would have a retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.

*In re Green*, 144 F.3d 384, 386 (6th Cir. 1998) (citing *Landgraf*, 511 U.S. at 280-81). Because we concluded in *Hanserd* that Congress did not express any clear intent to apply AEDPA retroactively, *Hanserd*, 123 F.3d at 924, the retroactivity inquiry then turns on whether petitioner can overcome the "abuse of the writ" standard, which "allows a second motion containing a new claim where the inmate can 'show cause for failing to raise [the issue in the first motion] and prejudice therefrom." *Id*. at 929 (quoting *McCleskey*, 499 U.S. at 494). As the First Circuit has observed, "reliance upon

---

[5] "Abuse of the writ" refers to new claims that were not raised in a previous petition, while successive claims advance grounds identical to grounds heard and decided on the merits in a previous petition. Both were barred before the enactment of AEDPA unless a petitioner made a showing of cause and prejudice. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992). While the central claim raised in this appeal involves a successive claim, for purposes of our retroactivity analysis, cases discussing "abuse of the writ" apply with equal force.

pre-AEDPA law as a basis for permitting a second petition rarely will clear this hurdle. The 'cause and prejudice' test that *McCleskey* imposed to screen out abusive deployments of the writ is notoriously difficult to pass." *Pratt*, 129 F.3d at 59. The case *sub judice* re-enforces this point.

Because petitioner raised his ineffective assistance of counsel claim in his first habeas petition (and it was ruled upon by both the district court and this court), it is successive. Thus, he must show "cause and prejudice," which he simply has not done.[6] With respect to his DNA claim, he has likewise failed to establish cause and prejudice. As explained in more detail below and in Judge Clay's concurring opinion, not only did petitioner know of, and request, DNA testing prior to the filing of his first habeas petition, there were strong reasons why counsel attempted to dissuade petitioner from pursuing DNA testing – reasons that were, in fact, borne out by the results.

In short, petitioner cannot overcome the "abuse of the writ" standard with respect to either of his claims and, hence, application of AEDPA's gate-keeping requirements poses no retroactivity problem.

**IV.**

In *Gonzalez v. Crosby*, the Court explained that a Rule 60(b) motion is distinguished from a second or successive petition under 28 U.S.C. § 2244(b) by the fact that the latter contains one or more "claims." A Rule 60(b) motion does not. 125 S. Ct. at 2647-48. For purposes of § 2244(b), a "claim" is "an asserted federal basis for relief from a state court's judgment of conviction." *Id.*

---

[6] As Judge Clay's concurrence explains at some length, neither has he shown by clear and convincing evidence that he is "actually innocent" of the death penalty. That onerous standard requires one to show that, "but for a constitutional error, no reasonable juror would have found petitioner eligible for the death penalty under the applicable state law." *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992).

at 2647. By contrast, a Rule 60(b) motion attacks "some defect in the integrity of the federal habeas proceedings." *Id.* at 2648.

With respect to his acquittal-first claims, Henderson argues that he is not raising a challenge to a state-court judgment, but is instead seeking to remedy a defect in the federal habeas proceedings. The defect to which he points is the district court's alleged failure to analyze the merits of the acquittal-first claim underlying the ineffective assistance of appellate counsel claim. *See Mapes v. Coyle*, 171 F.3d 408, 427-38 (6th Cir. 1999) (listing considerations for the district court in assessing a claim of ineffective assistance of appellate counsel, including the strength of the omitted claim).

We reject this characterization of the district court's prior opinion. When denying relief on the ineffective-assistance claim, the district court concluded that the underlying claims, including the acquittal-first claim, lacked merit. *See Henderson*, 101 F. Supp. 2d at 888 (denying the ineffectiveness claim because Henderson had failed to establish prejudice, i.e., that the underlying claims had merit).[7] While the analysis could have been stated in more detail (thus lengthening an already long opinion), the district court analyzed the underlying claims in order to reach its conclusion.[8] In our view, Henderson confuses conciseness of statement with absence of analysis.

_____

[7] His own motion appears to concede as much: "[R]elief is warranted because the Court erroneously concluded in its [1999] Order that Henderson's claim of ineffective assistance of appellate counsel . . . , while not procedurally barred, *had no merit*." Rule 60(b) Motion, May 7, 2002 at 1 (emphasis added).

[8] We note that *Mapes* also includes the following consideration as part of the inquiry into an ineffective assistance of appellate counsel claim: "Were the omitted issues dealt with in other assignments of error?" *Mapes*, 171 F.3d at 428; *accord Greer v. Mitchell*, 264 F.3d 663, 679-80 (6th Cir. 2001). In the case before us, the district court considered the acquittal-first instruction at some length in its discussion of the *Allen* charge. *Henderson*, 101 F. Supp. 2d at 916-18.

Because the district court reviewed the ineffective-assistance claim in a manner consistent with *Mapes*, Henderson's Rule 60(b) motion cannot be viewed as an attempt to rectify a defect "in the integrity of the federal habeas proceedings." *Gonzalez*, 125 S. Ct. at 2648. Rather, the motion reasserts the substance of those claims, thereby impermissibly "attack[ing] the federal court's previous resolution of a claim *on the merits*." *Id.* In short, Henderson's argument concerning the acquittal-first instruction raises a "claim" as defined by *Gonzalez* and thus his Rule 60(b) motion with respect to that issue is the equivalent of a successive petition.

Henderson likewise contends that his DNA claim also properly falls under Rule 60(b)'s purview because he is challenging unfairness in the federal proceedings. He does not, however, specify the precise nature of that unfairness. If viewed as an insufficiency of the evidence claim, then the defect cannot be the same "failure to analyze" alleged with respect to his acquittal-first claim. The district court explained in detail why the evidence of attempted rape was not only sufficient, but overwhelming. *Henderson v. Collins*, 101 F. Supp. 2d at 902-04. We discern no defect in the integrity of the federal habeas proceedings and conclude that, like his first Rule 60(b) motion, his supplemental motion raises a "claim" as defined by *Gonzalez* and therefore must be treated as a second or successive petition. *See generally Post v. Bradshaw*, 422 F.3d 419, 424-25 (6th Cir. 2005) (observing that a Rule 60(b) motion is a successive petition if it seeks to introduce newly discovered evidence in support of a claim previously denied) (quoting *Gonzalez*, 125 S.Ct. at 2647).

Under AEDPA, a state prisoner may not file a second or successive habeas corpus petition until the court of appeals issues an order authorizing the district court to consider the petition. 28

U.S.C. § 2244(b)(3)(A). Given the nature of the claims that Henderson's Rule 60(b) motions advanced, the district court should have transferred them to us as a request for permission to file such a petition. *See In re Bowling*, 422 F.3d at 440. We will remedy this error by construing Henderson's Rule 60(b) motions and appellate briefs as making that request. *Id.*

Permission may be granted to file a second or successive petition only if the proposed claims satisfy certain gate-keeping requirements. A claim presented in a successive petition that was presented in a prior § 2254 petition shall be dismissed. 28 U.S.C. § 2244(b)(1). Claims not presented in a prior § 2254 petition shall be dismissed from a second petition unless

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2). Henderson's claims do not meet these requirements.

As explained already, Henderson's acquittal-first claim has already been presented and must be dismissed.[9] 28 U.S.C. § 2244(b)(1).

---

[9] While we respect the concern of the district court that our prior opinion may have been called into question by *Davis v. Mitchell*, we note that the majority in *Davis* did not cite our opinion, much less discuss its reasoning. Furthermore, "A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *See Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Finally, in determining whether a habeas petitioner may file a successive petition, we must look to new rules of constitutional law handed down by the Supreme Court, not new interpretations of the law from this court.

With respect to his DNA claim, Henderson appears to argue that the DNA-test results render the evidence of the attempted-rape conviction constitutionally insufficient and, by extension, call into question its use as a statutory aggravating factor. There are two problems with this position. First, Henderson has already advanced that claim, *see Henderson*, 101 F. Supp. 2d at 902-04, and may not do so again, 28 U.S.C. § 2244(b)(1). Second, the newly discovered evidence does not apply to an insufficiency claim, which evaluates the evidence that *was* presented without regard to potentially contrary evidence that *might* have been presented had the more sophisticated DNA analysis been available. *See Herrera v. Collins*, 506 U.S. 390, 402 (1993).

Alternatively, to the extent that Henderson advances a freestanding claim of actual innocence, *see Herrera*, 506 U.S. at 429 (White, J., concurring), it too fails because 1) he is not relying on a new rule of constitutional law, 28 U.S.C. § 2244(b)(2)(A), and 2) he did not show due diligence in discovering this new evidence. *See* 28 U.S.C. § 2244(b)(2)(B)(i). By Henderson's own admission, it was scientifically possible to perform the DNA tests by at least 1993 – one year before Henderson refiled his federal petition. Thus, at the time of his *first* petition, he could have sought court funding, which he later received, for tests in support of a potential DNA claim.

Moreover, even if AEDPA's gate-keeping requirements had been satisfied, the DNA tests would not help Henderson. Had the jurors found the semen in the victim's vagina to be his, that would have established penetration and, given the other facts in this case, rape. However, the jury convicted him of attempted rape. Hence, they could not have found the semen to be his and must have found the attempted rape based upon other evidence, such as the time of the attack, the defensive wounds, or the victim's state of undress. In short. Henderson's new evidence does not

– and, as a logical matter, cannot – undercut any evidence supporting the charges of which the jury actually convicted him.

**V.**

The order of the district court filed July 10, 2003 is **vacated**. Pursuant to 28 U.S.C. § 2244, petitioner's Rule 60(b) Motion for Relief from Judgment and Supplemental Rule 60(b) Motion for Relief from Judgment, filed May 7, 2002 and May 30, 2002 respectively, are construed as applications to file a second or successive petition for a writ of habeas corpus and are **denied**.

**CLAY, Circuit Judge,** concurring. Were this the first instance in which Petitioner raised his claim of ineffective assistance of counsel due to counsel's failure to raise the underlying claim of "acquittal first" jury instructions, Petitioner's claim would warrant the grant of habeas relief. As explained in my dissent in the 2001 *Henderson* decision, the penalty phase of Petitioner's trial was defective, as the initial jury instructions were acquittal first jury instructions, which improperly biased the jury in favor of a death sentence. *Henderson v. Collins*, 262 F.3d 615, 625-26 (6th Cir. 2001) (Clay, J., concurring). Petitioner's state court appellate counsel provided ineffective assistance to Petitioner, as it failed to assert a claim based on these instructions on direct review. *Id.* at 635-36. Since, however, Petitioner first raised these claims in a prior habeas application, and since this Court rejected these claims in the 2001 *Henderson* decision, Petitioner must demonstrate that this Court may now review his second or successive habeas petitions at issue in this case. This is a heavy burden, one which Petitioner has failed to meet.

As the majority points out, this Court has specifically outlined the analysis a reviewing court must undertake in deciding whether AEDPA applies to a second or successive habeas petition, when the petitioner files his first habeas petition before AEDPA's effective date and his second or successive habeas petition after AEDPA's effective date. In both *In re Hanserd*, 123 F.3d 922 (6th Cir. 1997), and *In re Sonshine*, 132 F.3d 1133 (6th Cir. 1997), this Court held that a reviewing court must analyze whether the second or successive habeas petition would have survived under the pre-AEDPA "abuse of the writ" standard. *In re Sonshine*, 132 F.3d at 1135. If the second or successive habeas petition meets that standard, then a reviewing court may not apply the AEDPA standard to that petition, as such an application would have an impermissible retroactive effect under *Landgraf*

*v. USI Film Prods.*, 511 U.S. 244 (1994). *Id.* If the second or successive habeas petition does not

meet the abuse of the writ standard, then application of the AEDPA standard to that petition would

pass muster under *Landgraf*, as such application would not "attach new legal consequences" to the

petitioner's pre-AEDPA conduct, *i.e.*, the filing of the first petition. *Id.*

Under the "abuse of the writ" standard, the Court may not reach the merits of Petitioner's

successive petition absent cause and prejudice. *Schlup v. Delo*, 513 U.S. 298, 319 (1995) (citing

*Kuhlmann v. Wilson*, 477 U.S. 436 (1986)). A successive petition "raises grounds identical to those

raised and rejected on the merits on a prior petition." *Kuhlmann*, 477 U.S. at 444 n.6. In this case,

Petitioner raised the ineffective assistance of counsel claim in his first habeas petition, the district

court rejected the claim, and this Court affirmed the district court decision; thus, Petitioner's petition

is successive. Petitioner must show cause and prejudice for twice raising this claim:

> "[C]ause" in the context of successive habeas petitions . . . mean[s] "cause for
> bringing a petition that fails to present a new ground for relief. In other words, a
> petitioner must show cause for seeking review of the same claim twice--such as the
> discovery of new facts, or an intervening change in the law, that warrants
> reexamination of the same ground for relief raised in an earlier petition."

*Rosales-Garcia v. Holland*, 322 F.3d 386, 399 n.15 (6th Cir. 2003) (quoting *Campbell v. Blodgett*,

997 F.2d 512, 524 (9th Cir. 1992)). In this case, Petitioner has not presented discovery of new facts,

nor has he presented an intervening change in the law. Petitioner has no valid reason for raising the

same claim in his successive habeas application.

Although Petitioner has failed to show cause for raising his successive claim of ineffective

assistance of counsel, he may still prevail under the abuse of the writ standard. "Federal courts

retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a

petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Because Petitioner raises his ineffective assistance of counsel claim only with respect to the sentencing phase of his trial, Petitioner asserts only that he was not eligible for the death penalty. In order to substantiate this assertion, Petitioner must "'show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law.'" *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)).

Petitioner's claim is that his appellate counsel was ineffective in failing to raise a claim of acquittal first jury instructions on direct review. Under *Bagley*, the question then becomes whether Petitioner has shown by clear and convincing evidence that, properly instructed, "no reasonable juror would have found the petitioner eligible for the death penalty." *Id.* Petitioner does not meet this high standard. Even if the state court gave proper instructions, as opposed to the acquittal first jury instructions it did give, a reasonable juror could have still found that the aggravating circumstances in the case outweighed the mitigating circumstances, so that Petitioner was eligible for the death penalty. The evidence establishing aggravating circumstances was not *de minimus*; the evidence produced at trial amply supported the position that Defendant committed the murder during the commission of an aggravated burglary and an attempted rape. *See infra*. Moreover, while the state court instructed the jury to consider Petitioner's history and background, as well as any other mitigating circumstances, there is no evidence in the record that in fact mitigating

circumstances existed in Petitioner's case. In short, there is no clear and convincing evidence that no reasonable juror would have sentenced Petitioner to death, absent the acquittal first jury instructions. Petitioner has therefore failed to demonstrate that he is eligible to avoid the death penalty, so as to warrant relief under the abuse of the writ standard. Because Petitioner does not meet the requirements of the abuse of the writ standard, application of AEDPA to his successive habeas petition will not have an impermissible retroactive effect under *Landgraf*, so that such application is valid. As the majority discusses, Petitioner does not meet the requirements of AEDPA for his successive claim of ineffective assistance of counsel; as a result, this Court may not review this claim.

This Court must undertake a similar analysis of Petitioner's second habeas petition that addresses certain DNA evidence. With respect to cause, Petitioner first learned of polymerase chain reaction ("PCR") DNA testing in Fall 1988. He immediately sent correspondence to a laboratory in California inquiring about whether DNA testing would be appropriate for his case. The laboratory contacted Petitioner's counsel, and his counsel told the laboratory that testing was inappropriate at that time. Petitioner's counsel contacted Petitioner and told him that DNA testing would "have to wait" until post-conviction motions. When Petitioner was appointed new counsel in early 1989, he again requested DNA testing, but his new counsel did not obtain such testing. In 1992, the Ohio Public Defender circulated a letter asking death penalty inmates to express concerns about their representation. In response, Petitioner wrote a letter to the Ohio Public Defender expressing that his counsel was reluctant to have DNA testing performed. Petitioner offered a letter from his counsel dated May 17, 1993, in which his counsel stated that DNA testing would be

unhelpful, because the jury must have relied on evidence other than the semen found in the victim's body to convict Petitioner of attempted rape, as the jury had acquitted Petitioner of rape.

The facts show that Petitioner had consistently asked for DNA testing right up to when his first federal habeas petition was filed on February 15, 1994. His counsel did not undertake such testing for a variety of reasons, as explained above. Respondent's claim that Petitioner had deliberately bypassed DNA testing is incorrect; the party responsible for bypassing the testing was Petitioner's counsel. Petitioner had always sought DNA testing, only to be rebuffed by counsel.

The question then becomes whether counsel's refusal to have DNA testing performed constitutes cause. Not all attorney error is sufficient to constitute cause for failure to raise a claim in a previous habeas application; only attorney error that reaches the threshold of ineffective assistance of counsel as set out by *Strickland* constitutes cause. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Under *Strickland*, Petitioner must show that (1) counsel's performance was objectively deficient, and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984).

Petitioner's counsel's refusal to obtain DNA testing for the first federal habeas petition was not objectively deficient performance. In his letter to Petitioner concerning the matter, counsel stated:

> There is another problem with testing of the kind you suggest. Assume that the test results absolutely eliminate you as the source of the evidence found in the victim. That would mean that you could not have had sexual intercourse with the victim. However, the jury acquitted you of rape. You were convicted of attempted rape and that conviction must have been based on evidence other than the semen. This is true

> regardless of what the test results would have established. . . . The jury must have relied on the time the crime occurred, the position of the body, the state of undress, the defensive wounds and various other circumstances to find attempted rape.

> The bottom line on this is that I am not sure how the test could help us given these facts, and there is always the possibility that a test could turn up bad evidence.

(J.A. at 405.) The DNA test, even if it showed that Petitioner was not the source of the semen found in the victim's body, would be of very limited value in negating attempted rape. Such a result would be strong exculpatory evidence that Petitioner did not rape the victim; however, the jury acquitted Petitioner of the rape charge and convicted him of attempted rape. The Ohio Supreme Court viewed the situation in this manner:

> [T]o find attempted rape, the jury only had to find beyond a reasonable doubt that appellant purposely took a substantial step toward committing the rape of [the victim]. *State v. Woods*, 357 N.E.2d 1059 (1976). "To constitute a substantial step, the conduct must be strongly corroborative of the . . . [appellant's] criminal purpose." *Id.* Here, the victim's body was found nude, with legs spread. Appellant is a type O secretor and semen consistent with such a person was present on the appellant's coat. Semen was also found in the victim's vagina. The pattern of blood from injuries inflicted on the victim's body indicated that most were inflicted while she was in a horizontal position. Her body also had a bloody smear across her right breast. There was also no evidence of theft or any non-sexual crime for appellant's being in the apartment. Taken together, these facts, as established by circumstantial evidence, meet the *Woods* test. Circumstantial evidence is sufficient to establish an element of any crime, including attempted rape. *State v. Graven*, 374 N.E.2d 1370, 1373 (1978).

*State v. Henderson*, 528 N.E.2d 1237, 1241-42 (Ohio 1988) (third alteration in the original). The district court observed:

> [The victim's] left hand had been cut and wrapped in a towel. This fact may have led the jury to infer that there was some lapse in time between the first aggressive act toward [the victim] and her eventual demise. Coupling the inference of a break in the time of Petitioner's first aggressive act toward [the victim] with the coroner's conclusion that she was eventually murdered in a horizontal position as well as the

> fact that her body was found nude with her legs spread apart, we believe that there
> was sufficient evidence from which a jury could conclude that Petitioner attempted
> to make [the victim] submit by force or the threat of force to sexual intercourse . . .
> .

*Henderson v. Collins*, 101 F. Supp. 2d 866, 904 (S.D. Ohio 1999). Even if the DNA tests proved

Petitioner was not the source of the semen found in the victim's body, the circumstantial evidence

of attempted rape was substantial. Moreover, on federal habeas review, the district court must view

the evidence and inferences drawn therefrom in favor of the prosecution. *Jackson v. Virginia*, 443

U.S. 307, 326 (1979). Faced with the unfavorable circumstantial evidence and the unfavorable

standard of review, counsel's decision not to undertake DNA testing for the first federal habeas

petition was not objectively deficient performance.

This is especially true in light of the inculpatory evidence the DNA testing could and did in

fact produce. The tests showed that the blood found on Petitioner's coat belonged to the victim.

This evidence inculpated Petitioner in the crime of murder, especially considering that Petitioner

claimed he did not know the victim and was not present in her apartment the night of the murder.

Petitioner raised many errors with respect to the guilt phase of his trial in his first habeas petition;

many of these claims would be in jeopardy if such inculpatory evidence were to surface.[10] The

relatively minuscule benefit of subtracting the semen found in the victim's body from the attempted

rape calculus was greatly outweighed by the danger that the DNA tests could return this inculpatory

---

[10]For example, Petitioner would have difficulty claiming a "fundamental miscarriage of justice" for those claims that were procedurally defaulted.

evidence. As a result, Petitioner cannot show cause for failing to offer DNA evidence in his first federal habeas petition.

Likewise, Petitioner cannot show a "fundamental miscarriage of justice" if this Court does not examine this claim. A fundamental miscarriage of justice encompasses the situation where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. As explained above, the circumstantial evidence in this case does not support Petitioner's actual innocence of attempted rape. Because Petitioner has not demonstrated cause for failing to raise this claim on his first habeas petition, and because Petitioner has not demonstrated a fundamental miscarriage of justice, Petitioner does not meet the requirements for relief under the abuse of the writ standard. Application of AEDPA to this second habeas petition thus would not have an impermissible retroactive effect, and, as the majority notes, such application leads to the conclusion that this Court may not review this second habeas petition.

Despite my concurrence with the majority opinion, I write separately to reiterate that Petitioner's death sentence was the product of an unfair penalty phase due to the "acquittal first" jury instructions, and Petitioner's state court appellate counsel was ineffective in failing to raise this claim on direct appeal. During the penalty phase, the jury was given initial jury instructions that "communicated to the jury that all twelve members must agree on recommending or not recommending the death penalty before the could consider a life sentence. . . . Of great significance, however, the jury instructions did not communicate to the jury that one juror could prevent the imposition of the death penalty." *Henderson v. Collins*, 262 F.3d 615, 626 (6th Cir. 2001) (Clay, J., dissenting). These jury instructions created an impermissible bias towards the death penalty;

indeed, the Ohio Supreme Court previously addressed similar instructions and found them to be

unconstitutional:

> In Ohio, a solitary juror may prevent a death penalty recommendation by finding that the aggravating circumstances in the case do not outweigh the mitigating factors. *Jurors from this point forward should be so instructed.*
> . . .
>
> The record reflects that the jury in this case was instructed in a manner completely contrary to law, making it less likely for [the defendant] to benefit from the opinion of one juror that the death penalty was inappropriate. . . . [I]f a juror believed his one vote could not affect the ultimate result, he might acquiesce in the death sentence. In this case, the jury instruction *undermined the reliability of the jury verdict and risked erroneous imposition of the death sentence*, thereby materially prejudicing [the defendant's] right to a fair trial.

*State v. Brooks*, 661 N.E.2d 1030, 1042 (Ohio 1996) (emphasis supplied). Petitioner's initial jury

instructions did not explain to the jury that the jury need not acquit Petitioner of the death penalty

before it could consider a life sentence, nor did they explain that a single juror could prevent a death

penalty recommendation. Those instructions were therefore contrary to the law of Ohio and

"undermined the reliability of the jury verdict and risked erroneous imposition of the death

sentence." *Id.* These faulty instructions violated Petitioner's constitutional right to a fair trial, so

that this Court should have affirmed the grant of federal habeas relief to Petitioner in 2001.

This reasoning, however, was not adopted by the majority of the original *Henderson* panel,

and we are bound to adhere to that decision today. The majority rejected Petitioner's ineffective

assistance of counsel claim, and Petitioner's attempt to raise that same claim again is properly

characterized as a successive petition that does not meet the standards of AEDPA. Petitioner's claim

raising DNA evidence is likewise a second habeas petition that does not meet the standards of

AEDPA.  Petitioner's Rule 60(b) motions, construed as applications to file second or successive

habeas petitions, are properly denied.